HOWISON v. ALABAMA COAL & IRON CO.

(Circuit Court of Appeals, Fifth Circuit. November 19, 1895.)

No. 381.

1. SET-OFF—FRAUD IN SALE OF LAND—ALABAMA CODE.
In Alabama, under the Codes of 1852 and 1886, a defendant sued upon a note given for the purchase money of land has a right to set off any damages suffered through the fraud or deceit of the plaintiff, and arising out of the transaction of sale.

2. EVIDENCE—ORAL TO VARY WRITTEN—FRAUD.
Where the question of fraud or deceit in a written contract is in issue, such contract is not the sole evidence of the agreement of the parties, but

oral evidence of their acts and declarations, prior to the execution of the contract, and touching the matter of deceit, are admissible.

3. CORPORATIONS—AGENCY—NOTICE.

In an action upon a note given for part of the purchase money of land, which was defended on the ground that a portion of the land which the plaintiff had agreed to convey, and which defendant desired to buy, had been fraudulently omitted from the written contract between the parties, and from the deed given by plaintiff, there was evidence tending to show that the defendant, a corporation, had employed agents to inspect and report upon the lands which were the subject of negotiation, and to pass upon the sufficiency of the plaintiff's title, and that such agents had some knowledge of the omission of the land in question from the contract and deed. *Held*, that the existence of such knowledge was a question for the jury, under instructions that the corporation was bound by the knowledge acquired by any of its agents in the scope of their employment; and that it was error to charge the jury that, though the agents employed in respect to the purchase of the land had knowledge of the omission of the part in question, the corporation was not bound thereby, unless the agent who actually accepted the deed and executed the notes given therefor had knowledge of the same fact.

In Error to the Circuit Court of the United States for the Northern District of Alabama.

This was an action brought by the plaintiff in error, a citizen of Alabama, to recover on a promissory note for $14,486.67, executed by the defendant in error, a citizen of New Jersey. The consideration of the note was the purchase of certain timber conveyed by the plaintiff in error to the defendant in error by a deed dated the 12th day of March, 1891. The consideration for the conveyance was the payment of something more than $14,000 in cash, and the execution of two notes. One of the notes was paid, and the note sued on was the other. The defendant in error pleaded the general issue and seven special pleas. The second plea of the defendant is as follows: "(2) And, for further defense to this action, the defendant says that on or about the 20th day of October, 1890, the defendant, being engaged in the manufacture of charcoal iron, entered into a contract with the plaintiff for the purchase of all the timber on two tracts owned by him, and known as the 'Oakley Tract' and the 'Bibb Mill Tract,' lying partly in the county of Bibb, and partly in the county of Chilton, in the state of Alabama, and other tracts owned by plaintiff adjacent and near to the above larger tracts, and all within a distance of three and one-half miles of the East Tennessee, Virginia and Georgia Railway Company, containing not less than nine nor more than .eleven thousand acres of land, at and for the sum of four dollars per acre, to be paid: One-third on completing the deeds, conveying clear title to the said timber; one-third November 1, 1891; and one-third November 1, 1892,—with interest, to which plaintiff agreed to convey a clear title. Defendant avers that, at the time of the purchase of said lands from plaintiff, plaintiff did not then, and has not now, clear title to said lands, but was and is wholly without title to the following tracts of land, or the timber thereon, viz. [describing the lands], consisting of 560 acres, which said lands—the timber thereon—were at said time, and continuously have been, in the open, notorious, and continuous adverse possession of the real owners thereof,"—and claimed to abate the purchase money, $2,240, with interest. The fifth, sixth, seventh, and eighth pleas state the contract as it is alleged in the second plea, and set up defenses. The fifth plea, after stating the contract as above, concludes as follows: "That it was largely induced to enter into said contract by its desire to secure the timber from the Oakley tract; said tract being very valuable, both by reason of the quality and quantity of the timber thereon. And yet, although the defendant has paid to the plaintiff two-thirds of the purchase money, the said plaintiff has wrongfully failed and refused to convey or deliver possession to defendant of the most valuable part of the Oakley tract, namely, section 9, township 23, range 12 east, in Chilton county, Alabama. The plaintiff delivered to the defendant a deed which he represented conveyed said Oakley tract, but

which omitted said section 9 of the Oakley tract, which was the most valuable part of said land. That, at the time of the delivery of said deed, defendant well knew that it omitted section 9, but fraudulently concealed said fact from defendant; and by reason of the breach of said contract on plaintiff's part, and the fraud and deceit of plaintiff as aforesaid, defendant has been damaged, not only in the loss of said section of land, but the other tracts of land have been rendered inaccessible and of little use to plaintiff for the purpose for which it was purchased, or for any purpose, and have been greatly impaired in value,"—for which he claims damages as a set-off. The sixth plea, after alleging the contract as averred in the second plea, and the omission of section 9, contains the following: "Defendant says that, at the time of the making of said contract, it was wholly unacquainted with the land numbers or proper description of said lands by metes and bounds, and called upon the plaintiff to furnish a list giving a proper description of said Oakley tract and said Bibb Mill tract, and other smaller tracts adjacent and near to the above larger tracts; that plaintiff furnished a list of lands, which he represented was a correct and accurate description of said lands as aforesaid, and tendered to defendant a deed of conveyance to said lands, pretending that the same was in full compliance with the obligations of said contract on his part; and defendant, accepting and confiding in the truth of said representation of plaintiff in this behalf, accepted said conveyance, not knowing that the most valuable part of the land which it supposed it was purchasing had been omitted from said deed. And defendant says the fact is that said plaintiff, well knowing that said conveyance did not include all of the timber on all of the lands purchased by it, wrongfully and fraudulently omitted from said conveyance section 9, township 23, range 12 east, in Chilton county, Alabama, which is a part of the Oakley tract, and the most valuable of the land purchased by it from the plaintiff,"—and concluded by claiming damages for the omission by way of set-off, as a breach of the contract. The seventh plea, after setting out the contract to sell, and alleging that defendant was unacquainted with the character, quality, and location of the lands, avers that the plaintiff caused his agent to show the timber on the lands to an agent of the defendant, sent for the purpose of examining the lands. The plea then continues: "Defendant avers that a part of said above-mentioned land was well and thickly timbered, but a considerable part was poorly timbered, and a large number of acres were not timbered at all, but were completely denuded of timber, some of which was in cultivation, and a considerable part was so far detached from the main body as to be valueless to defendant for coaling purposes or for any purpose; that plaintiff and his agent well knew these facts, but sedulously concealed the same from defendant, and, in showing defendant said lands, so conducted defendant's agent as that he was permitted to see only such parts of the land as were well timbered, and all adjacent and near to said two tracts above mentioned; and its agent was persuaded and induced to believe that the acres of said land so shown him represented the average quantity and quality of said timber, and that the timber on the rest of said lands was equal in quantity, quality, and desirableness of location to that on the lands inspected, and that all the lands were adjacent and near to the Bibb Mill tract and the Oakley tract above mentioned. Defendant says that, relying upon said wrongful and fraudulent representation as to the quantity, quality, and location of said timber, it contracted with plaintiff for the purchase of the timber described in the contract, and for this the defendant asks to recoup."

To each of these pleas, numbered 2, 5, 6, 7, the plaintiff demurred. The grounds of demurrer assigned to the fifth and sixth pleas are as follows: (1, 2, 3, 4, and 5) That the plea does not show that the timber conveyed by the plaintiff was not reasonably worth the purchase price agreed to be paid. (6 and 7) That the plea did not show that defendant had suffered any damage. To the seventh plea these same grounds of demurrer were assigned, and in addition: (1) That the plea did not show that the plaintiff or any one authorized by him ever made any contract or representation in respect to the quantity, quality, or location of the timber to be conveyed. (2) That the plaintiff contracted to sell the timber on the land, and nothing more. (3) It is not shown how the agent of the defendant was persuaded or induced to

believe anything in respect to the lands, except what he could have learned by examination. (4) That the plea did not deny that the defendant could have inspected or examined the lands. (5) That the means of knowledge were available to the defendant. (6 and 7) That defendant's agent had opportunity and could have discovered all these facts before any notes were executed. (10) It is not denied that the real facts were discovered by defendant before the execution of the note sued on. And to each of the pleas 5, 6, and 7 (the pleas having been amended), the plaintiff assigned the following additional grounds of demurrer: (1) That the plaintiff executed a deed for lands under the contract, and it was not competent in a court of law to show the alleged misrepresentation. (2) That the matters alleged in the pleas are cognizable only in a court of equity. (3) That the alleged misrepresentations were mere matters of opinion. And as additional ground of demurrer to the eighth plea: (1) That it was not denied that the defendant went into possession of and used the timber conveyed, and had continued to use and hold the same. The plaintiff filed additional demurrers to pleas 5 and 6, and assigned as grounds the following: (1) That the plaintiff had executed and delivered to defendant, and defendant had accepted, a deed in performance of the contract alleged in the pleas. (2) That it appeared that the contract had been performed and extinguished. (3) That the pleas do not deny that the defendant accepted and held the deed, delivered by the plaintiff, in performance of the contract.

The court overruled each of these grounds of demurrer. The plaintiff thereupon filed a special replication, numbered 2, to pleas numbered 4, 5, 6, 7, and 8, alleging that he did enter into a contract, in writing, on October 20, 1890, and that the contract was to convey timber on lands in Bibb county, and "that after the making of said contract, and before the consummation thereof by the execution on the part of plaintiff of a conveyance, and on the part of defendant by the payment of the cash installment of the purchase money, and delivery of its promissory notes for the rest of such purchase money, full opportunity was given to defendant to make examination of the timber lands to be conveyed by plaintiff to defendant, and that the defendant availed itself of such opportunity, and through its own agents, and in such manner as it saw fit, did inspect and examine the land offered by plaintiff in performance of such contract on his part; that, of the entire body of lands offered by plaintiff, defendant chose and selected certain land, aggregating about, to wit, ten thousand eight hundred and sixty-five acres, which are described in the deed hereinafter referred to, and, before the execution and delivery of said deed, defendant was furnished with the government numbers of the land to be conveyed; that, after such examination and selection on the part of the defendant, plaintiff, on, to wit, the 12th day of March, 1891, executed and delivered to defendant, in pursuance and performance of said contract, and defendant accepted from plaintiff, in satisfaction and performance on the plaintiff's part of said contract, a deed of conveyance which in its recitals sets forth a copy of said contract." The contract is fully set out in the deed, which is pleaded at length in this replication, and the replication concludes as follows: "And plaintiff avers that, with notice of the location of said lands to be conveyed, the delivery of said deed was accepted by defendant as a performance of said contract on the part of plaintiff, after full examination of said lands, and defendant paid to plaintiff the cash installment of the purchase money, and delivered to plaintiff its two promissory notes, as provided by said contract, one of which is the foundation of this action; that defendant immediately went into possession of the timber on the lands described in said deed, and still remains in the undisputed possession thereof."

To this replication the defendant demurred, assigning 14 grounds of demurrer, as follows: (1 and 2) That the replication did not traverse the pleas, and was no answer. (3) That, admitting the acceptance of the deed, it was not shown that plea 4 was not true. (4) That, though the deed was accepted, it did not appear but that defendant was ignorant that section 9 was omitted. (5) It was not averred that defendant knew any part of the Oakley tract was omitted. (6) It was not denied that the defendant, though it accepted the deed, was unacquainted with the lands, and was furnished with a false list by plaintiff. (7) That it was not averred that defendant knew when it accepted the deed for the Oakley tract that any part of that tract was omitted.

(8) That, though the deed was accepted, whatever investigations were made were less thorough and deterred by the false and fraudulent conduct of plaintiff and his agents. (9) That, though the deed was accepted, it did not appear but that the lands added were worthless. (10) The contract was not confined to lands in Bibb county. (12) The deed shows that lands conveyed did not lie in Bibb, but a large tract thereof was in Chilton county. (13) The contemporaneous conduct of the parties in connection with the contract shows that lands in Chilton were included. (14) Though the defendant accepted the deed, it did not appear but that it was induced to accept it by the false and fraudulent representations of the plaintiff, set forth in pleas 4, 5, 6, 7, and 8.

This demurrer was sustained by the court, and thereupon the defendant filed additional replications, numbered 3, 4, and 5. The third replication differed from the second only in this: that the deed set out at length in the second was pleaded by reference merely, and the knowledge, and means of knowledge by defendant are averred as follows: "That full opportunity was given by defendant to make examination of the timber lands to be conveyed by plaintiff to defendant from the 20th day of October, 1890, to the 12th day of March, 1891; and that the defendant during that time availed himself of such opportunity, and, through its own agents, and in such manner as it saw fit, did go upon and over, inspect and examine, the lands offered by plaintiff in performance of such contract on his part. That, of the entire body of lands offered by plaintiff, defendant chose and selected certain lands, aggregating about, to wit, 10,685 acres. That, after such examination and selection on the part of plaintiff, defendant, on, to wit, the 12th day of March, 1891, executed and delivered to defendant, in pursuance and performance of said contract, and defendant accepted from plaintiff, in satisfaction and performance of the plaintiff's part of said contract, the deed of conveyance." The replication then avers: "That the delivery of said deed was accepted by defendant as a performance of said contract on the part of plaintiff, after full examination and selection, and with full means of knowledge in respect to the location and quality of said lands, and that defendant paid the cash part of the purchase money, executed its notes, and went into possession of the timber, and still so continued." The fourth replication is identical with the third, except that it avers that the deed was accepted "by defendant as a performance of said contract on the part of plaintiff after full examination and selection, and with full knowledge as to the location and quality of said lands, and defendant paid to plaintiff the cash installment of the purchase money, and delivered to plaintiff its two promissory notes, as provided by said contract, one of which is the foundation of this action. That defendant immediately went into possession of the timber on the lands described in said deed, and still remains in undisputed possession thereof." The fifth replication was interposed to pleas 4, 5, and 6, and alleged a performance of the contract set out in these pleas, by the execution, delivery, and acceptance of the deed set out in the second replication; that the defendant took and retained possession of the timber, and removed large quantities; the cash payment was made, and the first of the two notes was paid; and that this note sued on was the second note.

To replications 3, 4, and 5, the defendant demurred, and assigned each of the grounds of demurrer assigned to the second replication, and the following additional grounds: (15) That the replication did not show any novation or change of the contract of October 20th. (16) That the replication was self-contradictory, for it alleged that the lands contracted for were conveyed by the deed, while it appears by the deed that the lands lay in Chilton and Bibb counties. (17) It was not averred that defendant knew that any lands contracted for were omitted, nor was it shown but that plaintiff knew, and defendant did not know, that a material part of these lands had been omitted.

The circuit court sustained these demurrers to all the replications. The undisputed evidence showed that the plaintiff in error owned a large body of timber lands, amounting in the aggregate to about 32,000 acres, lying in Bibb, Perry, and Chilton counties, Ala.; that the defendant in error was a New Jersey corporation, which had been organized by the purchase of the property of an Alabama corporation, known as the Shelby Iron Company;

that the defendant and its predecessor were engaged in the manufacture of charcoal iron, and the two corporations were admitted on the trial to be the same thing; that, in 1887 or 1888, H. R. Stoughton was the superintendent and general manager of the Shelby Iron Company, and afterwards occupied the same position with the defendant; that, in 1887, Stoughton, as superin-tendent of the Shelby Iron Company, sent Charles Sparks, William Kidd, and John A. Edwards over the land to examine it, and these parties made an ex-amination of the plaintiff's timber lands, covering a period of about three weeks, and made a report of this examination and inspection to the Shelby Iron Company, delivering the report to H. R. Stoughton, who was then the superintendent, with a map showing the lands inspected and examined, noting each 40 acres, showing the amount of timber on each. Each of these witnesses testified that the plaintiff sent one Mark L. Smitherman with them to show the lands, and, in estimation of its value, the two last witnesses stated that cleared lands and old fields were considered and estimated, and reported to Stoughton as superintendent. The evidence also showed that the Alabama Coal & Iron Company was organized in February, 1890; that H. R. Stoughton was general manager of the last-named company; that some time in the fall of 1890, prior to October 20th, Stoughton sent one H. C. Fancher, with Charles Sparks, to see the plaintiff, to know on what terms he would sell about 10,000 acres of the timber. The evidence shows that plaintiff of-fered to sell the land at four dollars per acre for the timber. Defendant's witnesses Sparks and Fancher testified that in this conversation the Oakley tract and the Bibb Mill tract were mentioned, and were to be included in the land to be sold. Fancher testified that Sparks was to be sent down in case he got up the trade. It was shown that Sparks did go down, and they applied to the plaintiff for some one to show them the lands; that plaintiff told M. L. Smitherman, the same person who had been with Sparks, Kidd, and Edwards in 1887, to show Fancher and Sparks the land; that these last-named persons rode over the lands together for two or three days, for the purpose of examin-ing the timber. Fancher and Sparks testified that among other lands shown them by Smitherman was the Oakley tract, and section 9 in that tract was also shown them as a part of the land to be conveyed; that they examined the Bibb Mill tract, and came to some timber that had been struck by a hur-ricane. On cross-examination, Sparks stated that he had ridden over the land with Edwards and Kidd in 1886 and 1887; that afterwards, in January or February, 1891, he rode over the tract with William Parker, who was sent down by the defendant to examine the timber lands; that Parker had a map of the lands to be examined, and that he discovered from Parker's map at that time that section 9, which he knew was a part of the Oakley tract, was omitted; that he knew Parker was sent down to examine the land for de-fendant; that the part of the land affected by the hurricane was also on Parker's map; and that one Splawn rode with him and Parker, and showed them the lines of the Oakley tract.

The evidence showed that, after the examination by Fancher and Sparks, H. R. Stoughton, the general manager of defendant, went down to Randolph, where the plaintiff lived, and entered into the contract in writing which is recited in the deed of March 12, 1891. The evidence further showed that, after this contract had been made, the defendant sent an attorney down to meet the attorney of the plaintiff, for the purpose of examining the titles of the lands proposed to be conveyed; and afterwards these titles were sub-mitted to S. J. Bowie, Esq., another of defendant's attorneys, for examination, and each of these attorneys examined the papers and titles. On examination in chief, defendant asked Mr. Bowie the following question: "Q. Was any-thing said, or did you understand at the time, or Mr. Bush, so far as you knew, that any part of the Oakley tract was being omitted from that deed? (The plaintiff objected to witness stating what he understood, or what Mr. Bush understood, which objection the court overruled.)" This witness (Bowie) testified that he examined the titles to the lands, which were offered; that there was some defect in the title to the Oakley tract, and that this ac-counted for the provision in the deed for the payment of the purchase money by the defendant in case Howison failed to pay for the Oakley tract; that he had conferences with Mr. Logan, the attorney for the plaintiff; and that,

finally, the deed was prepared in form as shown by the record. This witness stated, against the objection of the plaintiff, that he understood that the whole of the Oakley tract was included, and that this was his construction of the contract, whether the lands lay in Bibb or Chilton counties.

"The defendant here offered deposition of H. R. Stoughton. The plaintiff objected to the introduction of this deposition, because of the manner in which the deposition was taken, and because there is no United States statute by which the deposition could be taken as it was taken, and because there has been no notice served on the plaintiff as to the taking of said deposition. The court overruled this objection, and allowed the deposition to be read to the jury." The following facts in respect to this deposition were agreed to in open court by counsel: "I understand that the admission as to the deposition of H. R. Stoughton is that the firm of London & Tillman had no connection of any kind with this suit in February, 1894, and in fact never had up to this time; that I was a member of the firm of London & Tillman, and was employed by Major Howison during the present term of the court; and, also, that the firm of London & Tillman was dissolved before this service was made; the firm dissolved the 1st of February, 1894, and this service was on the 19th; that the firm of London & Tillman had been employed in another suit pending in this court between the same parties prior to the 19th of February, 1894, and on that day were counsel of record for the plaintiff in the other case; that neither the plaintiff nor the attorneys, Hargrove, Logan & Vandegraft, had any actual notice of the issuing of the commission, or that the deposition of Stoughton had been taken, until it was produced in evidence on this trial. Mr. Knox: Also, that the marshal served the notice of the firm of London & Tillman, as attorneys for the plaintiff, and that neither member of the firm indicated or stated any denial whatever that he was the attorney for the plaintiff, and, from that time to the time of the objection to the testimony, no indication has ever been made by either member of the firm that they were not the attorneys; that the deposition has been on file in this court since March 2d, and no objection was made thereto before it was offered in evidence. Mr. London: That the deposition was on file in the clerk's office, but not with the other papers in the case." The defendant objected to the following question in the deposition, and moved to exclude the answer thereto: "Q. State the conversation as you now recollect it. A. He said to me, 'The company ought to have that land;' and I said, 'When you get in shape to deed us the Oakley tract, I would recommend the purchase of it to the company.' He then said he was able to deed the tract. We then spoke about what this purchase would consist of, and he pointed out on a map in the office at Shelby what lands he could sell and give deed of, and that territory included what is known as the 'Oakley Tract.' I told him that I would recommend the purchase of it to the company. (The plaintiff objected to this last question, and moved the court to exclude the answer, because it calls for a conversation a month or two prior to the making of the contract, and because all previous oral negotiations are merged in the contract, and in the deed executed in pursuance of the contract. The court overruled this objection and motion.)" The plaintiff also objected to the following question, and moved to exclude the answer thereto, in the deposition: "Q. State the conversation you had with Howison in reference to the tracts of land you were purchasing at the time the contract was made. A. I made the description of the land in the contract with the assistance of Mr. Howison and Charles Sparks, the man who was sent by the company to inspect the premises; and, in referring to the Oakley tract, Howison said that it included all the Oakley tract. (The plaintiff objected to this question, and moved to exclude the answer upon the same grounds mentioned last above. The court overruled this objection and motion.)" The following questions and answers to said witness contained in the deposition were objected to by the plaintiff, and the objections overruled: "Q. When you drew this contract, did you understand that it included all of the Oakley tract? Q. And did you also understand that the Oakley tract included section 9, township 23, range 12? A. I did. Q. And was it a fact that this contract included section 9? A. It was. (The plaintiff objected to this question, and moved to exclude the answer, because it calls for the conclusion of the witness.)"

T. G. Bush, president of the defendant, was examined, and testified that he had been president of the Alabama Coal & Iron Company since April, 1890; that H. R. Stoughton was general manager of the defendant company in October, 1890; that he had sent Stoughton to make the contract with the plaintiff for the purchase of the land from plaintiff; that he (witness) had accepted the deed which was made by the plaintiff to the defendant; that he did not know at the time the deed was delivered that any part of the Oakley tract was omitted; that nothing was said by the plaintiff at the time the deed was delivered about the omission of any part of the Oakley tract; that some of the lands were duplicated in the deed, and some were omitted; that plaintiff offered to substitute, and did substitute, some of the lands that were omitted. He was asked whether he had had an opportunity to examine the land, or the location or quality of the timber, and said he had not. He said that he acted upon the representation of the plaintiff as to the quality, location, and character of the timber in regard to the substituted land, and that he understood that all the Oakley tract was included in the conveyance; that afterwards he found that section 9 was omitted. On cross-examination, he stated that he had not conducted any of the negotiations; that he had sent Stoughton down to conclude the trade, and that Stoughton came back and brought a duplicate of the contract with him; that he had no idea about the location of the Oakley tract; that he had no knowledge of the location of the tract at all; that after the contract was entered into, on the 20th of October, 1890, he employed one William Parker to go down and examine the lands which the plaintiff had offered to convey under the contract; that Parker went down, came back, and made a verbal report to him, and brought a small map. When asked whether he bought the lands on the representation of the plaintiff, he answered, "Partially so." His testimony in regard to this man Parker is as follows: "Q. I say, you sent one man, Mr. Parker? A. Yes, sir. Q. And he made a report to you about the land? A. Yes, sir. Q. And brought you a plat, and showed you just what the land was? A. Yes, sir; that is, he showed me as he found it to be from a hurried examination. He was there, I think, two or three days. Q. Didn't you tell him to go and examine the land? A. Yes, sir. Q. Did he report to you that he had examined it? A. Yes; I told him that I wanted to get a better general idea of the condition of the land, the location and quality of the timber. Q. And the quantity of it? A. Yes, sir. Q. And that was before the deed was executed? A. Yes, sir. Q. And he showed you a plat of the lands that were examined? A. Yes; the land he went on. Q. Did he say anything to you about section 9? A. I have no recollection of his mentioning it." He testified further, that, after the deed was executed, he discovered that section 9 was omitted, and thereupon wrote to the attorney for the plaintiff, asking him to put section 9 in. He was then examined in reference to the map which Parker brought with him when he made his report, and testified that this map showed that section 9 was omitted; that he knew nothing personally of the land numbers, and depended upon his agents to make the examination; that, as matter of fact, he discovered the omission of section 9 through Sparks, after the deed was executed. He further testified that, up to the time the agreement was made, all his information was derived from H. R. Stoughton, the general manager, who had charge of the business, and that, after the agreement was made, he put the matter entirely in the hands of the attorneys, and the examination of the lands was done under his direction. He also testified that all the land papers, titles, and everything of that kind, were turned over by the Shelby Iron Company to the Alabama Coal & Iron Company.

The defendant offered other evidence to show that section 9 was a part of the Oakley tract, and also that certain parts of the land included in the deed which was executed were in the adverse possession of third persons. The defendant also introduced as a witness John A. Edwards, who testified, on cross-examination, that he went with Sparks and Kidd in 1887, while being shown over the lands of the plaintiff by M. L. Smitherman; that they had a map; that they examined each 40 acres, and computed the number of cords of wood which it would yield, and put it on the map; that they were three or four weeks in the examination, and were sent down there by H. R. Stoughton, who was general manager of the Shelby Iron Company at that

time; that they made a written report on the timber, and gave that, with the map, to Stoughton. The defendant also introduced much evidence to show the extent to which the lands would be diminished in value by the omission of section 9.

Henry Splawn was introduced as a witness for the plaintiff, and testified that he had no connection with the plaintiff, and never had; that he lived on a piece of land adjoining what is known as the "Oakley Tract"; that early in January, 1891, Parker came to him, and asked him to show him the lines of the timber that the Shelby Iron Company bought from the plaintiff; that Parker had a plat or map with him showing the government survey; that he went with Parker for one day, and that the next day they came across Sparks, the witness who was examined by defendant; that Sparks went with them to examine the timber after that, and that these two persons stayed at his house the night after Sparks joined them; that they told him that they wanted to go through section 9. He was asked whether he heard Sparks or Parker say anything about section 9, and he answered as follows: "A. When he got to where Mr. Sparks was checking up the wood, he taken Mr. Sparks off, and they had a little talk. I don't know what they said then, of course, but afterwards I heard them say—Mr. Sparks and Mr. Parker were talking—that they believed there must be some mistake about section 9; that it was left out of the numbers, or something that way." That he rode over a considerable amount of the timbered lands, and discovered clearings and bare spots.

M. L. Smitherman, the person who rode over the lands with Edwards, Kidd, and Sparks in 1887 or 1888, and with Sparks and Fancher in 1890 and 1891, was introduced by the plaintiff, and testified that he was sent for by the plaintiff in 1890 or 1891, to show the timber lands north of Randolph to Sparks; that he went with Sparks; that Sparks told him that he wanted him to carry him over the same lands that he had carried him, Kidd, and Edwards over; that they went through the land, and rode over it; that he carried Sparks and Fancher to places where they could see the land for some distance; that he passed through clearings and old fields, and passed through the land where the hurricane had been, and that he made no representations to Sparks or Fancher; that he did not know where section 9 of the Oakley tract was; that he only had a general idea of the lands. On cross-examination, he testified that Sparks told him that he wanted to see the Bibb Mill tract, north of Randolph, and he was to show all the timber on plaintiff's lands lying north of Randolph Station, in Bibb county. He described in detail how this riding was done.

The plaintiff was introduced as a witness in his own behalf, and testified to the circumstances which led to the making of the original contract; that Fancher came to him, and spoke to him about selling the timber; that he named the price; that, some little time after that, Sparks came, and asked him to send a man with them to look at the land; that plaintiff said he would send a man who had seen it before; that, two or three years before, he had sent Smitherman with Kidd, Sparks, and Edwards to examine the lands; that afterwards H. R. Stoughton, the general manager of the defendant, came down to Randolph, where plaintiff was, and the contract for the sale of the land, in writing, was concluded; that he (plaintiff) made no statement to Stoughton in respect to the lands; that he knew Stoughton had had the lands examined critically two or three years before that; that Stoughton and the Shelby Iron Company knew more of his lands than he did, and had a map of the lands, and Stoughton told him (plaintiff) that he had a map and an estimate on all of the lands that the plaintiff owned; that, after the contract was executed, he turned his deeds and papers over to his attorney to prepare the deeds.

Plaintiff then introduced his attorney, S. D. Logan, who had charge of the preparation of the deeds, who testified that Mr. Otts, the attorney employed by the defendant, came down to see him in reference to the titles, after the plaintiff had turned the papers over to him; that Otts came as the representative of the defendant, and, before proceeding to prepare abstracts of title for the land, witness and Mr. Otts examined the contract to see what lands were covered by it. He was proceeding to state the construction which was put

upon the contract by himself and Mr. Otts when he was stopped by the court. Plaintiff then made the following offer of proof: "Mr. London: We want to show by Mr. Logan that, when Mr. Otts went down there to examine the title, the question arose as to what land the titles to were to be examined; that the contract was there, and read; that Mr. Otts was a lawyer representing the defendant, and Mr. Logan a lawyer representing the plaintiff; that they took the contract, and under it each concluded and agreed that it was confined to land in Bibb county. (The defendant objected to the plaintiff making this proof, which objection the court sustained.)" The witness then described how he had prepared the deeds to the land, and had taken them to the defendant, and defendant had refused to accept the lands, owing to certain defects in the titles; that a second deed was prepared by him, and carried to defendant's office, and tendered, but was not accepted, and the deed which was offered in evidence on the trial was prepared by the defendant's own counsel; that conferences of witnesses were principally with Mr. Bowie, who was examined as a witness. And plaintiff made the following offer of proof of what transpired between these lawyers: "Q. Was anything said between you and Mr. Bowie about what this contract meant? (Defendant objected.) Mr. London: I want to prove by Mr. Logan that the question of the construction of the contract as to what county the lands were to be confined to arose between Mr. Logan, representing the plaintiff, and Mr. Bowie, representing the defendant, and that in this conversation Mr. Logan insisted that the plaintiff was only to convey lands in Bibb county, and that the contention was not denied by Mr. Bowie. (The defendant objected to this, which objection the court sustained.)"

T. G. Bush was recalled by the plaintiff, and testified that he never made any objection to receiving the Chilton lands. On cross-examination, he stated that neither the plaintiff nor any one for him had ever said anything to him in reference to what lands were to go into the deed.

The plaintiff in error requested the court, in writing, to give the following instructions to the jury, which the court refused, and exceptions were reserved to each refusal: "(1) If the jury believe all the evidence, then the defendant knew before the execution of the deed that section 9 was a part of the Oakley lands, and was omitted, and its omission could not be a fraud on defendant. (2) The defendant having undertaken to 'examine and inspect the timber before the execution of the deed, and there being ample time and opportunity for that purpose, it is chargeable with notice of everything it could have discovered by the exercise of reasonable diligence, notwithstanding any representations which the jury may find were made by the plaintiff or his agents. (3) The undisputed evidence shows that Sparks, the agent of defendant, knew, after the execution of the contract, and before the execution and delivery of the deed, that section 9 was a part of the Oakley tract. (4) If the jury believe from the evidence that Parker, the agent of the defendant, was sent to examine the timber, and had his attention called to the fact, after the contract was made, that section 9 was a part of the Oakley tract, and that it was not put into the list of lands furnished by the plaintiff to the defendant, this would be knowledge on the part of the defendant, whether Parker communicated any of these facts to any officer of the defendant or not. (5) If the jury believe from the evidence that, before the execution and delivery of the deed, the defendant, or any of its agents, knew or had notice that section 9 was omitted, and, with such notice or knowledge, accepted the deed for the other lands, then there was no fraud or misrepresentation on the part of the plaintiff, and the defendant cannot set off or recoup anything by reason of such omission. (6) If the jury believe from the evidence that Parker was sent to examine and inspect the timber lands in January, 1891, before the execution of the deed from the plaintiff to defendant; and if the jury further believe from the evidence that Parker learned where the Oakley lands were, and went onto this land, and then discovered that section 9 of that tract was omitted from the list of lands furnished by the plaintiff, and that his attention was then called to the fact that this section was not included in the list of lands furnished, or proposed to be conveyed by plaintiff, —then the defendant knew of this omission before the deed was executed; and with this knowledge, thus acquired, accepted the deed omitting section

9, then this omission would not constitute any fraud or ground for a set-off or recoupment by the defendant. (7) The undisputed evidence shows that Parker, the agent of the defendant, was sent to examine some parts of the timber to be conveyed by the plaintiff to defendant; and if the jury believe from the evidence that Parker was informed as to what lands composed the Oakley tract, and after the execution of the contract, and before the deed was executed, and while he was examining the Oakley tract, Parker discovered that section 9 was a part of the Oakley tract, and was omitted from the list of lands the timber on which was to be conveyed by plaintiff to defendant, and, with this knowledge on the part of Parker, the defendant accepted the deed with section 9 omitted, then such omission would not entitle the defendant to set off or recoup any damages against the amount claimed by the plaintiff. (8) If any agent of the defendant who was engaged in this transaction before the execution and delivery of the deed, March 12, 1891, knew or ascertained what lands constituted the Oakley tract, and knew or was informed that section 9 was a part of the Oakley tract, and if any such agent went on the lands before the deed was made, and then discovered that section 9 was omitted from the lands to be conveyed by the plaintiff, then the defendant knew that section 9 was omitted, and its omission by plaintiff could not be a fraud or ground of defense or abatement of the purchase money. (9) The defendant is chargeable with notice of every fact which it could have ascertained by reasonable diligence through its agents, in the examination of lands and timber, or the title papers or deeds to it by plaintiff."

The defendant below requested the following instructions, which the court gave, and the plaintiff excepted: "(1) In and by the contract executed by and between the plaintiff and the defendant on the 20th day of October, 1890, the plaintiff obligated himself to convey to the defendant clear title to all the timber on the tract of land known as the 'Oakley Tract,' together with certain other tracts of land mentioned and set forth in said contract. If the defendant complied with the terms of said contract on its part, the plaintiff was bound to convey all the timber on the Oakley tract, without regard to the county in which the same was situated, if such was the contract; and if you believe from the evidence that the defendant did comply with said contract on its part, and paid to the plaintiff one-third of the purchase money for the timber mentioned in said contract, and executed its two notes for the balance of said purchase money,—one payable November 1, 1891, which has since been paid, and one payable November 1, 1892, which is the foundation of this suit, —and the plaintiff did not convey to the defendant all the Oakley tract, but intentionally omitted section 9, which was valuable, both by reason of the quality and quantity of the timber thereon, and a material inducement to the defendant in entering into said contract, and this omission was unknown to the defendant, then the defendant is entitled to recover of the plaintiff such damages as it has sustained, not only by reason of the loss of said section 9, but to the extent that the timber on the other lands purchased has been impaired in value by reason of the loss of section 9. (2) If you find from the evidence that section 9 was a part of the Oakley tract, and was omitted from the deed of conveyance executed by the plaintiff to the defendant on March 12, 1891, as a compliance with his contract executed October 20, 1890, in determining whether or not the defendant had notice of said omission, it is not sufficient to show that the attorneys employed by the defendant to examine the titles to the timber purchased had opportunity to know, or even actually knew, that section 9 was not included in the conveyance which was afterwards made; nor is it sufficient to show that the agents of the defendant sent to examine the timber discovered that section 9 was not included in the list of lands furnished by the plaintiff, which he proposed to convey in compliance with his contract. If you find that a part of the Oakley tract, namely, section 9, was by the plaintiff knowingly omitted and withheld from said deed, and that the president of the company who accepted the same, and paid a part of the purchase money, and executed notes for the balance, one of which is the foundation of this suit, did not know that section 9, or any part of the Oakley tract, was omitted from said deed, but believed that the deed conveyed all of the Oakley tract, the failure of the plaintiff to disclose the omission of a part of said tract was a fraud upon the defendant, and

the defendant is entitled to recover, not only the amount of damages sustained by the loss of section 9 or such part of the Oakley tract as was omitted, but it is also entitled to recover damages to the extent that the omission of section 9 has impaired the value of the other lands purchased, if the evidence shows that the value of the same has been impaired. (3) Notice of the existence of facts by one agent of the company is not notice to the company in such a sense as will preclude the company from complaining of a fraud perpetrated upon another of its agents, who was innocent and uninformed about the existence of said facts. If, therefore, you find from the evidence in this case that the contract with the plaintiff for the purchase of certain timber was concluded by the president of the company, who paid a part of the purchase money for said timber, and executed the note which is the foundation of this suit for the balance of said purchase money, and received a conveyance which purported to convey all the timber which the plaintiff contracted to convey in and by his agreement in writing executed on the 20th of October, 1890, but which in fact did not convey a material part of said timber, the failure to include the timber omitted is a fraud upon the defendant, notwithstanding its attorneys who prepared the conveyance and its agents who were sent to examine the timber may have had access to the papers, and information which might have put them upon notice of the omission. If the agent of the defendant who accepted the deed, and paid a part of the purchase money, and executed a note or notes for the balance, which is the subject-matter of this suit, did not know of the omission, but believed that the deed conveyed not a part merely, but all of, the lands purchased, then the defendant is entitled to damages, not only for the loss of the timber omitted, but to the extent that the value of the timber conveyed has been impaired, if at all, by the omission of said timber from the deed. (4) If you believe from the evidence that the plaintiff sent his agent, Mark L. Smitherman, to show the timber mentioned in the contract of October 20, 1890, to the defendant's agents, and to inspect the same, and that said agent showed section 9, and represented same as being part of the Oakley tract, and included in the timber to be embraced in the sale; and that this timber was valuable, both by reason of the quantity and quality of the timber thereon, and was a material inducement to defendant in making the purchase; and that the plaintiff omitted this section of the timber from the deed afterwards made; and that defendant did not know of this omission,—the plaintiff is responsible for the action of his agent, Smitherman, whether he expressly authorized him to make the particular representations actually made by him or not. (5) If you believe from the evidence that the plaintiff sent his agent, Smitherman, to show the timber to be purchased and included in the contract of October 20, 1890, to defendant's agents sent to inspect the same; and that said Smitherman showed defendant's agents, Sparks and Fancher, certain timber both in Chilton and Bibb counties, including section 9, as being the timber to be included in the sale, and, in so showing said timber, so conducted said agents as that they would see only the good timber, and not the vacant lands, and afterwards represented to the defendant's agents that he had shown them some of the best and some of the worst of the timber, and that the rest was about an average; and that this representation was not true, but that a large part of the timber was worthless, and a considerable part of the lands conveyed were vacant and in cultivation; and that the defendant relied upon said representations, and purchased the same without knowledge of the fact,—the plaintiff is responsible for the representations of his agent, and the defendant is entitled to the damage it has sustained by reason of such representations. (6) If the plaintiff's agent, Mark L. Smitherman, made material representations as to the location, quality, and quantity of the timber on the lands to be sold, which were material inducements to the defendant in making the purchase, the plaintiff cannot retain the benefits received by reason of said representations, and at the same time deny responsibility for the acts of the said agent."

There were other requests to specially instruct the jury, which were refused, and exceptions were taken to other instructions given by the court, which it is not necessary to recite. There was a verdict recognizing and sustaining to a large extent the defendant's set-off to the note sued on, and the court be-

low sustained the verdict, and rendered judgment thereon. The plaintiff in the court below brings the case here for review, assigning errors involving all the proceedings in the case.

Alexander T. London, for plaintiff in error.

John B. Knox and Sydney P. Bowie, for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges.

PARDEE, Circuit Judge, after stating the facts, delivered the opinion of the court.

There are 86 alleged errors of the trial judge in the progress of this case, and we give the foregoing lengthy statement of the proceedings for the purpose of justifying counsel as far as we can in his assignments, by showing that, from the extent of the proceedings and the objections made on the trial, it was possible that the trial judge could have made that many specific errors in one case. Generally, we find that, where the errors complained of are multiplied and reproduced under different forms, counsel have either endeavored to make up in quantity what may be lacking in quality, or else, doubting their own judgment, have been unable to distinguish the strong from the weak points of their case. However, with the aid of the learned counsel who briefed and argued this case for the plaintiff in error, we are able to arrange his many assignments of error under three heads, to wit, errors in rulings on the pleadings, errors in the admission and rejection of evidence, and errors in charging the jury.

The main question which arises in regard to the pleadings is whether, in a suit by a vendor of real estate for the recovery of the purchase money, the vendee may set off or otherwise recoup the damages he has suffered by the fraud and deceit practiced by the vendor directly affecting the quantity or quality of the thing sold. It is conceded that, by the law and practice in Alabama prior to the Code of 1852, it was settled that, save in exceptional cases, a purchaser of lands, when sued for the purchase money, could not set off nor recoup for damages arising from the fraud or deceit of the vendor in the transaction. Patton v. England, 15 Ala. 69; Dunn v. White, 1 Ala. 645; Elliot v. Boaz, 9 Ala. 773; Homer v. Purser, 20 Ala. 573. At the same time the party defrauded was not without a remedy, since he had a clear right to maintain an action at law against the vendor for the fraud and deceit practiced upon him. Monroe v. Pritchett, 16 Ala. 785; Gibson v. Marquis, 29 Ala. 668; Gordon v. Phillips, 13 Ala. 565. By the Code of Alabama of 1852 (section 2240), and now in the Code of 1886 (section 2678), it is declared that mutual debts, liquidated or unliquidated demands not sounding in damages merely, subsisting between the parties at the commencement of the suit, may be set off one against the other by the defendant or his personal representative, whether the legal title be in defendant or not. Since the adoption of this provision, we understand that it has been uniformly held in Alabama that, in a suit at law by the vendor for the purchase money, the defendant can set off damages arising out of the transaction. Holley v. Younge,

27 Ala. 203; Martin v. Wharton, 38 Ala. 637; Kelly v. Allen, 34 Ala. 663; Eads v. Murphy, 52 Ala. 520; Bridges v. McClendon, 56 Ala. 327; Joseph v. Seward, 91 Ala. 598, 8 South. 682. It is even probable that this is the only remedy of the defendant.

In Howell v. Motes, 54 Ala. 1, where a purchaser, complaining of fraud and deceit when sued at law for the purchase money, omitted to make his defense, and afterwards sought a remedy in equity, Brickell, C. J., says:

"The grounds on which relief is sought against the judgment at law are that it is founded upon a promissory note, the consideration of which is the purchase money of land; that the complainant was induced into the purchase by false representations of the defendant that he had and could make the title to the land; that, in fact, the title resided in third persons, from whom the complainant was compelled subsequently to purchase the lands. Prior to the Code it may be that these facts would not have constituted a defense available at law. Since the Code they would form an available legal defense. The sum paid or contracted to be paid in extinguishment, or rather in acquisition of the title from those holding it, would have been the proper matter of set-off or recoupment against the note given to the defendant, and, exceeding it in amount, would have been a full answer to the suit at law,"—citing Holley v. Younge, supra, and Martin v. Wharton, supra.

Relying upon these authorities, and without further reviewing the adjudged cases cited by industrious counsel, we are disposed to hold that the defendant in the circuit court had a right to set off against the plaintiff's demand for the balance of the purchase money, represented by the note sued on, any damages suffered through the fraud or deceit of the plaintiff, and arising out of the transaction of sale. The issues, as settled under the rulings of the circuit court, substantially present defenses within this rule; and although, as presented by the record, some of the rulings assigned as erroneous are open to criticism, and, standing alone, would require discussion, and perhaps warrant relief, yet, on the whole, we are of opinion that no reversal is warranted on errors so far as the pleadings are concerned.

The rulings of the trial court on the admission and rejection of evidence do not appear to be seriously assailed, except in regard to the admission in evidence of the deposition of H. R. Stoughton, in regard to which it is urged that no notice of taking the said deposition had ever been given, and to the admission in evidence of conversations alleged to have taken place between the plaintiff's and the defendant's agents prior to the execution of the contract of October 20, 1890, and prior to the execution of the deed. The admission in the record, and recited in the statement of the case, gives the facts with regard to the notice given of the taking of the Stoughton deposition, from which each side finds the conclusion clear in its own favor. As we find ourselves compelled to reverse the case, and award a new trial, on grounds hereinafter to be stated, and as, on such new trial, the question as to sufficiency of notice of taking depositions need not again arise, we think it unnecessary to further consider the matter.

As the issues in the case involve the question whether the plaintiff was guilty of fraud and deceit in the contract of October 20,

1890, and in the execution and delivery of the deed, in pursuance of said contract, we are of opinion that the acts and declarations of the parties prior to the execution of the contract and touching the matter of deceit were admissible. We agree to the rule declared in Pettus v. McKinney, 74 Ala. 108, and Insurance Co. .v. Pruett, Id. 487, cited and relied upon by the learned counsel for the plaintiff in error, to wit: "When parties make agreements verbally, and then reduce them to writing, in the absence of fraud or mistake, the writing becomes the sole memorial and expositor of the contract, and in it all prior parol or verbal stipulations are merged." But, so far as the rule is applicable, we place the case in hand within the exception named, which, by the way, is one well recognized in the text-books.

We come now to consider the errors assigned in relation to the instructions given by the trial judge to the jury. The important instructions asked by the plaintiff in error and refused by the court, and the instructions asked by the defendant in error and given by the court, have been set out at length in the statement of facts, and it is not necessary to recapitulate. An important, if not the turning, point in the case, was whether the corporation (defendant in the court below) had or was fully charged with notice, at the time the deed for the timber lands was accepted and the notes for the purchase money executed, that section 9 of the Oakley tract, although included in the preliminary agreement, was not included in the deed of conveyance. Upon this point there is much and somewhat conflicting evidence, but we have no difficulty in finding from the record that, in respect to the purchase of the timber on the lands belonging to the plaintiff in the court below, there is evidence tending to show that the defendant corporation employed agents to inspect and report upon the quality and amount of timber upon the lands in question, and also employed agents to pass upon and determine the sufficiency of the plaintiff's title and right to convey the timber on the lands included in the deed, and that these agents so employed had some knowledge and were more or less informed that section 9 of the Oakley tract was not among the lands the timber of which was to be, and thereafter was, conveyed to the defendant. The substance of the instructions asked by the plaintiff was to the effect that the defendant corporation was bound by the knowledge of these agents, acquired within the scope of their employment. The propositions, however, advanced by counsel for the plaintiff on this line, are clearly inadmissible, either because they invade the province of the jury as to matters of fact, or state too broadly the law applicable to the case; and, if our action were based wholly upon the instructions requested by the plaintiff and refused by the court, we should have difficulty in holding that there was any error in refusing said instructions as a whole or as separate propositions. When, however, we come to the instructions asked by the defendant and granted by the court, the error is, we think, fully apparent. These instructions are to the effect that, although agents of the corporation employed in respect to the purchase of the

timber in question had notice that the timber of section 9 of the Oakley tract was not included in the deed of conveyance, yet the company was not bound by such notice, unless the agent of the company who actually accepted the deed and executed the notes had knowledge of the same fact. In other words, the jury was practically instructed that the notice to and the knowledge of the corporation were limited to the notice to and the knowledge of the agent who accepted the deed. In our opinion, this was erroneous. The text-books say:

"When an agent performs an act on behalf of his principal, the latter, by a legal fiction, is regarded as the party performing the act; and, by a similar fiction, the principal is regarded as having any knowledge by the agent which would affect the validity of the act if the agent were acting for himself. In other words, the knowledge of an agent binds the principal to the same extent as if it were the knowledge of the principal, in any transaction in which the agent represents the principal; and it is immaterial when or how the knowledge of the agent was acquired." Mor. Priv. Corp. § 540c.

"It is well settled that a corporation is not chargeable with knowledge of facts merely because those facts were known to its incorporators or stockholders or clerk. But the corporation has notice of facts which come to the knowledge of its officers or agents while engaged in the business of the corporation, provided those facts pertain to that branch of the corporate business over which the particular officer or agent has some control. Thus, a corporation has been charged with notice of facts which were known at the time to its agent, local agent, or superintendent. So, also, as regards the higher officers of the company. Thus, the company has been charged with notice of facts known to the treasurer, secretary, cashier, and sometimes the president. Where a corporation takes title to land through its incorporators, and all of them, as well as the president, had constructive or actual knowledge of a flaw in the title, the corporation thereby had similar notice. But in all cases the test turns on whether the corporate agent received the knowledge in the regular course of business." Cook, Stock, Stockh. & Corp. Law, § 727.

"It is a general rule, settled by an unbroken current of authority, that notice to an agent while acting within the scope of his authority, and in reference to a matter over which his authority extends, is notice to the principal. In respect to this rule, two important elements will be noticed. The first of these is that the notice or knowledge which will affect the principal is that only which is possessed by the agent while he is agent, and while he is acting within the scope of his authority. Whether the notice or knowledge must in all cases have been acquired by the agent during the agency is a question upon which there is some divergence of authority, and which will be noticed in a following section. The second element is that the notice or knowledge which shall be imputed to the principal is that only which relates to the subject-matter of that agent's authority, or, in other words, is that only which relates to the business or transaction in reference to which that agent is authorized to act by and for the principal." Mechem, Ag. § 718.

"Two general theories prevail as to the foundation upon which this rule is based, and the results of these respective theories are not entirely alike. The first finds the reason of the rule in the legal identity of the agent with the principal; in the fact that the agent, while keeping within the scope of his authority, is, as to the matter embraced within it, for the time being, the principal himself, or, at all events, the alter ego of the principal,—the principal's other self. Whatever notice or knowledge, then, reaches the agent under these circumstances, in law, reaches the principal. It is the legitimate and necessary result of this view, therefore, that only such notice or knowledge as comes to the agent while he is agent is thus binding upon the principal. The other theory is based upon the rule that it is the duty of the agent to disclose to his principal all notice or knowledge which he may possess, and which is necessary for the principal's protection or guidance. This duty the

law presumes the agent to have performed, and, according to the view now being considered, imputes to the principal whatever notice or knowledge the agent then possessed, whether he has in fact disclosed it or not. According to this view, therefore, it is immaterial when or how the agent obtained the information, if he then possessed it. The courts have not, however, always recognized these differences, nor have their decisions in all cases been consistent with the theory adopted." Mechem, Ag. § 719.

"So far as that notice or knowledge which is acquired during the agency is concerned, the result, under either theory, is obviously the same. Such notice or knowledge is chargeable to the principal in the same manner, and with the same effect, as though it had been communicated to or acquired by him in person." Mechem, Ag. § 720.

These authors are in accord with adjudged cases, and the principles declared need no argument to sustain them.

As we read the record, there is no evidence that would have warranted the assumption by the court that the defendant corporation or its agents had notice or knowledge that the timber on section 9 of the Oakley tract was or was not included in the deed accepted by the corporation, and therefore the question of such notice or knowledge was a question for the jury upon the evidence in the case, and under instructions to the effect that corporations, as well as individuals, are bound by the knowledge of their agents acquired in the scope of their employment, and that all agents employed by the defendant corporation in respect to the contract of purchase of timber, either to ascertain facts or take action for the guidance or benefit of the corporation, were the representatives of the corporation in that behalf, whose knowledge in relation to the facts pertaining to the purchase of the timber in question was in law the knowledge of the corporation.

As the views herein expressed in regard to the instructions actually given by the court require a reversal of the case, we do not think it necessary to further discuss the many other errors assigned on the record. The judgment of the circuit court is reversed, and the cause is remanded, with instructions to award a new trial.